UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14161-GAO

PAUL FRASER and DEBORAH FRASER,
Plaintiffs,

v.

PRUDENTIAL INSURANCE AGENCY, LLC, and PRUDENTIAL INSURANCE COMPANY
OF AMERICA, a/k/a PRUDENTIAL,
Defendants.

OPINION AND ORDER
December 20, 2018

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a report and recommendation (dkt. no. 197) ("R&R"), recommending that the plaintiffs' requests for summary judgment and sanctions (dkt. nos. 171, 179, 181) be denied and that Prudential's Motion for Summary Judgment (dkt. no. 175) be granted. The plaintiffs filed timely objections to the recommendation, as well as a response to Prudential's reply.

After reviewing the R&R, the parties' submissions, and the record, I OVERRULE the plaintiffs' objections and ADOPT the R&R in its entirety. The Plaintiffs' objections are meritless. I agree with the magistrate judge that the policy lapsed in accordance with its terms and that Prudential properly filed a Form 1099-R as a result.

I am also in agreement with the magistrate judge on the imposition of sanctions: Prudential's request for sanctions is GRANTED insofar as the plaintiffs are hereby enjoined from filing any further pleadings against Prudential Insurance Company of America or Prudential

Insurance Agency, LLC, relating to this insurance policy or related tax assessment without prior leave of court, except for the purposes of appealing this judgment.

Accordingly, the plaintiffs' requests for summary judgment and sanctions (dkt. nos. 171, 179, 181) are DENIED. Prudential's Motion for Summary Judgement (dkt. no. 175) is GRANTED and its request for sanctions is GRANTED as described above. Judgement shall enter for Prudential.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

PAUL FRASER and DEBORAH FRASER,    )
    )
       Plaintiffs,    )
      v.    )        CIVIL ACTION
    )        NO.  14-14161-GAO
PRUDENTIAL INSURANCE COMPANY    )
OF AMERICA, a/k/a PRUDENTIAL,    )
    )
       Defendant.    )

# REPORT AND RECOMMENDATION ON
# PRUDENTIAL'S MOTION FOR SUMMARY JUDGMENT AND
# PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

August 28, 2018

DEIN, U.S.M.J.

## I.  INTRODUCTION

The Plaintiffs[1] originally brought this <u>pro</u> <u>se</u> action against Prudential Insurance

Company of America and Prudential Insurance Agency, LLC alleging those entities wrongfully

cancelled Paul Fraser's life insurance policy, and fraudulently reported a resulting taxable gain

to the Internal Revenue Service ("IRS"), thereby requiring Paul and Deborah Fraser to defend

against a tax deficiency notice issued by the IRS.  This court previously dismissed the action

against Prudential Insurance Agency, LLC.  (Docket No. 59).  Therefore, the sole remaining

---

[1] The named Plaintiffs are Paul and Deborah Fraser.  The Frasers maintain that George E. Kersey serves as their New York based attorney and is the assignee of Deborah (<u>see</u> Docket No. 128), but Mr. Kersey has not been permitted to appear in this court.  In connection with the pending motions, no party has raised the issue of who constitutes the proper plaintiffs.  For convenience, the court will refer to Paul Fraser, Deborah Fraser, and George Kersey collectively as the "Plaintiffs."

defendant is Prudential Insurance Company of America, and that entity will be referred to herein as "Prudential."

Following the court's ruling on various dispositive motions, the sole remaining count in this action is Count IV against Prudential for the alleged improper cancellation of Paul Fraser's insurance policy. (See Docket Nos. 53, 59). This matter is presently before the court on Plaintiffs' "Objection to Electronic Order 169 [sic] and Renewed Motion for Summary Judgment" ("Plaintiffs' Objection and Renewed Motion") (Docket No. 171), and Prudential's "Motion for Summary Judgment." (Docket No. 175).

The Plaintiffs filed an opposition and supplemental opposition to Prudential's motion, in which they also seek entry of summary judgment in their favor and imposition of sanctions against Prudential, as well as default judgments against Prudential and Prudential Insurance Agency, LLC. (Docket Nos. 179, 181). The court has already ruled numerous times that there is no basis for a default judgment against Prudential Insurance Agency, LLC since it was dismissed from this case on November 25, 2015, or against Prudential since it filed a timely answer on December 9, 2015. (See, e.g., Docket Nos. 31, 48, 61, 67-69, 74, 157). Plaintiffs have proffered no reason for this court to revisit those rulings. Additionally, at the motion hearing on July 11, 2018, Prudential requested that the court issue sanctions and enjoin Plaintiffs from continuously filing such motions against them in this court.

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Prudential's "Motion for Summary Judgment" (Docket No. 175) be ALLOWED, and that Plaintiffs' requests for summary judgment in their favor (Docket Nos. 171, 179, 181) be DENIED. Additionally, this court recommends that Prudential's request for

sanctions be GRANTED in that the Plaintiffs be precluded from filing any further pleadings against Prudential or Prudential Insurance Agency LLC relating to the Policy (as defined herein) or related tax assessment without prior leave of court, except in connection with an appeal of the rulings on any of the motions for summary judgment.  Finally, this court recommends that the Plaintiffs' request for sanctions be DENIED.

## II.  <u>STATEMENT OF FACTS</u>

### <u>Scope of the Record</u>

The following facts are undisputed unless otherwise indicated.  The facts are derived from "The Prudential Insurance Company's Statement of Facts" (Docket No. 176) ("DF") and the exhibits attached to the Affidavit of Andrew Yonker ("Yonker Aff."), which is attached as Exhibit A to "Defendant The Prudential Insurance Company's Motion for Summary Judgment" (Docket No. 175) ("Def. Ex. __").[2]  Although Plaintiffs aver that the statements made by Prudential are "completely false" (<u>see</u> Docket No. 179), they cite no contrary evidence.  Plaintiffs did not submit a counterstatement of facts nor did they dispute Prudential's Statement of Facts.  As a result, Prudential's facts are deemed admitted pursuant to Local Rule 56.1.

In court during oral argument on those motions, Mr. Fraser submitted additional documents in support of his contention that he paid the overdue premium and that, as a result, his policy did not lapse.  In addition, at this court's request, Prudential provided the court with relevant tax court filings that were referred to by Mr. Fraser.  Prudential objected to the court's

---

[2]  The exhibit submitted by Prudential as Def. Ex. 3 did not contain the language quoted in DF ¶ 15.  The court required Prudential to supplement its filing if the records existed.  (Docket No. 193).  In response to this order, Prudential filed a "Notice of Filing" attaching Def. Ex. A-7 and A-8, which correspond to the information contained in DF ¶ 15 (Docket No. 194).

consideration of these documents as not being properly filed. While the court agrees that they were not properly or timely filed, the documents are not in dispute and they form the basis of the claims at issue here. In order to fully address the outstanding issues, the documents have been considered by this court. This court has herewith filed the tax court decision and the government's pre-trial memorandum in the tax court provided by Prudential at the court's request as Docket No. 195, and the following documents provided by Mr. Fraser as Docket No. 196: a check dated June 15, 2010 (redacted), a letter dated July 6, 2010, a letter dated July 7, 2010, a letter dated October 4, 2010, and a letter dated February 2, 2011.

## Overview of the Policy

Prudential issued Paul Fraser a whole life insurance policy (the "Policy") on October 1, 1991 with a face value of $500,000, insuring his life. (DF ¶ 3; Yonker Aff. ¶ 1). Deborah Fraser is the named beneficiary of the Policy. (DF ¶ 2). Under the Policy, Mr. Fraser was obligated to make premium payments of $525 on the first day of every month to keep the Policy in force. (Id. ¶¶ 4-6). If a premium was not paid by its due date, the Policy granted thirty-one days of grace (the "Grace Period"), which kept the Policy in force during those days. (Id. ¶ 7). If the premium was not paid before the Grace Period ended, the Policy provided that it "will end and have no value, except as [Prudential] state[s] under Contract Value Options." (Id.; Def. Ex. A-1 at 6).

If the Policy ended, the Policy provided that the net cash value would be used to provide extended term insurance, which provided a different type of insurance using the cash value of the Policy. (DF ¶ 11; Def. Ex. A-1 at 8). The Policy did not contain a provision that states the cash value of the Policy automatically applies to past due premium payments. (DF ¶ 12). Mr.

Fraser would be able to reinstate his Policy after the Grace Period, but only after certain conditions were met, including an obligation that he "give [Prudential] any facts we need to satisfy us that the Insured is insurable for the contract" and "any contract debt . . . must be restored or paid back." (Id. ¶ 8).

The Policy allowed Mr. Fraser to borrow against the cash value of the Policy, thereby reducing the net cash value of the Policy. (Id. ¶ 10). Mr. Fraser did, in fact, routinely exercise his right to borrow against the cash value of the policy. (Id. ¶ 13). The loan requests Mr. Fraser completed provided that there might be tax consequences if the Policy ended. (Id. ¶ 15; Def. Ex. A-8). The Loan Request Form Mr. Fraser completed in 1998 provided that he understood "that there may be tax implications on the request(s) and that the request(s) (including tax reporting and income tax withholding) cannot be reversed once processed (because Prudential may not give legal or tax advice, you may want to consult your tax advisor)[.]" (Id. ¶ 15; Def. Ex. A-7).

Finally, according to Prudential, in the event the Policy ended, Prudential was obligated to report both to the policyholder and the IRS on Form 1099-R any loan amount that was outstanding on the Policy to the extent that it excluded the total premiums paid to the Policy. (DF ¶ 30).[3]

### Failure to Pay Premium and Issuance of Form 1099-R

On April 1, 2010, Mr. Fraser did not pay his $525 monthly premium. (Id. ¶ 16). As a result, the Policy entered into the Grace Period. (Id. ¶ 17). The Grace Period expired on May 2,

---

[3] This understanding was confirmed by the IRS in its pretrial memorandum filed with the tax court in response to Mr. Fraser's petition. A copy has been included by the court in Docket No. 195.

2010.  (Id.).  On May 10, 2010, Prudential sent Mr. Fraser a notice (the "May 10 Letter")

informing Mr. Fraser that the Policy had "lapsed" because Prudential had not received his

monthly premium payment on April 1, 2010.[4]  (Id. ¶ 18; Def. Ex. A-4).  As explained in the May

10 Letter:

> **We're concerned because we haven't received your monthly premium payment that was due on April 1, 2010.**  As a result, your policy [number] lapsed on May 2, 2010.  But don't worry, if you act quickly you can still reinstate your policy without having to answer any health questions.
>
> ...
>
> To reinstate your policy, just mail the attached payment coupon and a check made payable to Prudential for $1,050.00.  This represents the past due payment for April plus the May payment now due.  Please note that we must receive your payment by June 2, 2010 **(be sure to mail your payment so that we receive it on time)**.

(Def. Ex. A-4 (emphasis in original)).

It is undisputed that Mr. Fraser did not make any payment prior to June 2, 2010.

Rather, he points to a check he says he mailed to Prudential dated June 15, 2010 in the amount

of $1,575.00, which he contends should have eliminated all of his tax liabilities.  For the reasons

detailed below, this court finds this argument unpersuasive.

Following Mr. Fraser's nonpayment on June 2, 2010, Prudential sent a "Notice of Lapse"

letter dated June 3, 2010 that stated the Policy had lapsed because "we have not received the

premium due on April 1, 2010."  (Def. Ex. A-5).  Therein, Mr. Fraser was informed that he would

---

[4]  Mr. Fraser does not deny receiving any of the correspondence from Prudential.  In 2010, all notices to insureds were created and sent electronically to Prudential's third party vendor, Millville.  (DF ¶ 19). Millville prepared the notices for mailing and delivery via the United States Postal Service.  (Id.).  This process was used for all notices, including those sent to Mr. Fraser.  (Id. ¶ 20).

have to obtain and complete an application and needed to request a quote of the amount he would need to submit to reinstate the Policy.  (Id.).

As detailed more fully below, Prudential sent a "Lapse-Final Notice" dated July 6, 2010 to Mr. Fraser's home address.  (Id. ¶ 31; Def. Ex. A-6).  Therein, Prudential confirmed that the Policy had lapsed because it had not received the premium due on April 1, 2010.  (Id.).  Prudential asserts that July 6, 2010 was the "lapse processing date."  (DF ¶ 28).  The lapse processing date is ninety days from the "paid to date" of the Policy and is the date that the administrative system processed the lapse for tax purposes.  (Id.).  On the lapse processing date, Prudential's system uses the "paid to date" and the "lapse date" to calculate the taxable amount.  (Id.).  For Mr. Fraser's Policy, the "paid to date" was April 1, 2010 and the "lapse date" was May 2, 2010.  (Id. ¶ 29).  As stated in the July 6, 2010 letter, "any loan amount that is out-standing on your contract at the time of lapse is taxable based on how much it exceeds the total premiums paid into the [P]olicy.  We are required to report this information to both you and the Internal Revenue Service (IRS) on Form 1099-R."  (Def. Ex. A-6).

When the Policy "lapsed" on May 2, 2010 for nonpayment of premium, there was an outstanding loan secured by the Policy's cash value.  (DF ¶ 32).  Prudential applied the cash value to repay the outstanding loan balance, including any interest.  (Id. ¶ 33).  The amount used to repay the loan was treated as an amount Mr. Fraser received and was taxable to the extent it exceeded the total premiums paid on the Policy.  (Id. ¶ 34).  At the time of the lapse, the Policy loan plus interest totaled $82,987.12.  (Id. ¶ 35).  The total premium paid was $66,669.61.  (Id.).  Prudential issued a Form 1099-R for the Policy for tax year 2010, reporting a

taxable gain to Mr. Fraser of $16,317.51. (Id.).[5] While Mr. Fraser does not challenge Pruden-

tial's calculations, he does challenge Prudential's contention that the Policy had lapsed.

As noted supra, Mr. Fraser sent a check to Prudential dated June 15, 2010 in the amount

of $1,575.00. (Docket No. 196). According to an affidavit filed by Mr. Fraser, "Prudential

waited until early July to deposit the payment[.]" (Docket No. 169 at Ex. 1, ¶ 6). As noted

above, Prudential sent a "Lapse-Final Notice" dated July 6, 2010, which Mr. Fraser admits

receiving. (Def. Ex. A-6). The letter informed Mr. Fraser that the Policy had lapsed for failure to

make the April 1, 2010 payment, and that, unless instructed otherwise, Prudential would, in

accordance with the contract, continue to provide extended term insurance, i.e., a different

coverage. (Id.). As further explained in the letter:

> Please be aware that any loan amount that is outstanding on your contract at
> the time of lapse is taxable based on how much it exceeds the total premium
> paid into the [P]olicy. We are required to report this information to both you
> and the Internal Revenue Service (IRS) on Form 1099-R. **Reinstating your
> contract will not eliminate these tax reporting requirements.** Because each
> situation is unique, we would suggest that you contact your tax advisor with
> any questions related to this taxable event.

(Id. (emphasis added)).

In a letter dated July 7, 2010, on which Mr. Fraser relies, Prudential confirmed that it

had received his payment of $1,575.00 but stated that it was not processing the payment

because the policy had lapsed. (Docket No. 196). Prudential wrote further, "[i]n order to

consider your request for reinstatement, we require an additional premium payment of

$525.00, along with a fully completed Application for Reinstatement." (Id.). Mr. Fraser

---

[5] This apparently led to a tax assessment of $2,541.00 per Mr. Fraser's petition to the IRS. Due to the
confidential nature of the information contained therein, this court has not filed a copy of the petition,
which Prudential had provided at this court's request.

apparently paid the additional amount and filled out the application, and Prudential reinstated the Policy on or around September 24, 2010, as it notified Mr. Fraser by letter dated October 4, 2010. (Docket No. 196).

Mr. Fraser requested that Prudential reverse the Form 1099-R. Prudential believed that it was unable to do so for the reasons it explained fully in a letter dated February 2, 2011. (Docket No. 196). As Prudential wrote in part in an explanation relevant to the instant litigation:

> Please be aware that even though you reinstated the policy by paying the past-due premiums, under Internal Revenue Service (IRS) rules, the taxable gain resulting from the lapse in 2010 is still reportable. Additionally, upon reinstatement, any outstanding loan value was restored to its original condition. The taxable gain reported as a result of the lapse was then added to the cost basis so that it will not be reported as gain in the future.

(Id.).

The IRS issued a notice of deficiency to Mr. Fraser. He challenged it and requested a trial. In a decision dated January 28, 2014, the United States Tax Court ruled that "[p]ursuant to the agreement of the parties in this case," it was ordered and decided "[t]hat there is no deficiency in income tax due from, nor overpayment due to, petitioners for the taxable year 2010." (Docket No. 195). Thus, there was no decision addressing the merits of Mr. Fraser's claims. This litigation followed.

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. STANDARD OF REVIEW

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co.,

794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (internal quotation marks and citation omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative."  Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted).  Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment."  Id. (citation omitted).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." Peck v. City of Boston, 750 F. Supp. 2d 308, 312 (D. Mass. 2010) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991)).

## IV.  DISCUSSION

### A.  Plaintiffs' Requests for Summary Judgment

Plaintiffs allege that statements made by Prudential are false and, thus, request the entry of summary judgment in their favor.  Local Rule 56.1, which governs cases filed in the United States District Court for the District of Massachusetts, contains express requirements for summary judgment motions.  As Local Rule 56.1 provides in relevant part, "[m]otions for summary judgment shall include a concise statement of the material facts of record[.]"  In the instant case, Plaintiffs have not provided a concise statement of material facts, and they have not sufficiently supported their allegations with references to materials in the record.  Their failure to do so "constitutes grounds for denial of the motion."  Id.

Even acknowledging that the Plaintiffs are pro se (although George Kersey has practiced law in the past), they are not excused from satisfying the requirements of Federal Rule of Civil Procedure 56 or Local Rule 56.1.  Courts "have consistently held that a litigant's 'pro se status does not absolve him from compliance with the Federal Rules of Civil Procedure.'"  FDIC v.

Anchor Props., 13 F.3d 27, 31 (1st Cir. 1994) (quoting United States v. Heller, 957 F.2d 26, 31 (1st Cir. 1992)). "This applies with equal force to a district court's procedural rules." Id. Accord Linehan v. Harvard Univ., 29 F.3d 619 (table), 1994 WL 249763 (1st Cir. June 9, 1994) (per curiam).

Failure to comply with the filing requirements for a Rule 56 motion in the instant case is not a mere technicality. The Plaintiffs' oppositions and requests for summary judgment in their favor are replete with conclusory allegations of wrongdoing without a sufficient explanation of the underlying facts. They also make pronouncements of law without citation. Moreover, Plaintiffs added new exhibits to the summary judgment record at the hearing on July 11, 2018. This presentation makes it virtually impossible for Prudential to respond. For these procedural reasons, this court recommends that the Plaintiffs' requests for summary judgment in their favor (Docket Nos. 179, 181) be denied. Moreover, as detailed below, the record does not support the Plaintiffs' basic contention that Mr. Fraser's Policy did not lapse. Rather, the record establishes that the Policy did, in fact, end in accordance with its terms, and that Prudential acted in accordance with the terms of the Policy. Therefore, the Plaintiffs' requests for summary judgment should be denied for this reason as well.

**B.**     **Prudential's Motion for Summary Judgment**

Prudential moves for summary judgment alleging Plaintiffs have failed to offer sufficient evidence to show a genuine dispute exists as to Plaintiffs' sole remaining claim for improper cancellation of the Policy. While not very clear, Plaintiffs appear to argue that Prudential improperly cancelled the Policy because a policy with a net cash value cannot lapse, and because the payment had been made. (See Docket No. 179, ¶¶ 1-3). The undisputed facts

establish, however, that consistent with the terms of the Policy, Prudential used the net cash value to purchase extended term insurance, and that Mr. Fraser did not make a timely payment to prevent his life insurance policy from lapsing.

### The Policy Could Lapse for Non-Payment

"The interpretation of an insurance policy is a matter of law." Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 65 (1st Cir. 2012). Interpretation of an insurance policy "is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 280, 675 N.E.2d 1161, 1164 (1997). "Ambiguous policy terms are construed in favor of the insured." Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009). However, ambiguity does not exist "simply because the parties offer different inter-pretations of the policy language." Id.; see also Lumbermens Mut. Cas. Ins. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466, 645 N.E.2d 1165, 1168 (1995). In the instant case, the Policy states:

> We grant 31 days of grace for paying each premium except the first one. If a premium has not been paid by its due date, the contract will stay in force during its days of grace. If a premium has not been paid when its days of grace are over, the contract will end and have no value, except as we state under Contract Value Options.

(Def. Ex. A-1 at 6). Although, as Plaintiffs allege, the Policy does not explicitly state the word "lapse," it is unambiguous that the contract terminates at the end of the Grace Period.

Under the Contract Value Options, the Policy provides nonforfeiture benefits in the form of extended term insurance. (Def. Ex. A-1 at 8). Nowhere in the Policy does it state the cash value will be applied to past due premium payments. Moreover, the Policy explicitly states that

[13]

the cash value will be used to provide the appropriate length of coverage for the extended term insurance.  (Id.).  There is nothing to support the Plaintiffs' contention that a policy with a net cash value cannot lapse.  Rather, the Policy is quite clear, as were the notices sent to and received by Mr. Fraser.  Mr. Fraser had the opportunity to prevent the Policy from ending by making the premium payment within the Grace Period, i.e., by May 2, 2010.  He failed to do so.  As detailed in the letter of May 10, 2010, he could have reinstated his whole life policy automatically by paying the amounts owed for April 1, 2010 and May 1, 2010 by no later than June 2, 2010.  He failed to do that as well.  Therefore, his Policy lapsed and the net cash value was used to purchase extended term life insurance.  His whole life insurance policy was only reinstated in September 2010 — after he completed the necessary application and made all the payments then due.  Prudential is entitled to summary judgment on the Plaintiffs' remaining claim of improper cancellation of the Policy.

### The Form 1099-R was Properly Issued

The record also supports Prudential's contention that it was obligated to issue Form 1099-R to the IRS once the Policy lapsed, and the subsequent reinstatement of the Policy did not negate Prudential's obligations.  (See Docket No. 196 (Feb. 2, 2011 letter); see also Docket No. 195 (government's pre-trial memorandum)).  Prudential was required by federal law to issue a Form 1099-R because "loans against a life insurance contract's cash value . . . [have] the same effect as paying the proceeds directly to the policyholder."  Ledger v. Comm'r, IRS, 102 T.C.M. (CCH) 119 (T.C. 2011), 2011 WL 3299818 at *2 (citations omitted).  The Plaintiffs have

failed to establish that there was anything improper in Prudential's issuance of the 1099-R Form.[6]

## The June 15th Check was Untimely

Finally, the record does not support the Plaintiffs' claim that the check of June 15, 2010 reinstated the Policy.  As detailed above, Mr. Fraser was clearly advised that to prevent the Policy from lapsing he needed to make the payment by May 2, 2010, which he failed to do. After the Policy lapsed on May 2, 2010, Mr. Fraser was clearly advised that he could reinstate the Policy without having to answer any health questions if he paid $1,050.00 by June 2, 2010. (Def. Ex. A-4).  Again, he failed to do so, after which he was clearly informed that in order to reinstate the Policy he would need to complete an application and obtain a quote and pay the amount which was then overdue.  (Def. Ex. A-5).  While Mr. Fraser did send a check in the amount of $1,575.00, the record indicates that he did not complete the application and pay the amount then due (which exceeded the amount of his June 15th check) until September 2010. (Docket No. 196 (Oct. 4, 2010 letter)).  The undisputed facts establish that the June 15th check did not prevent the Policy from lapsing, and did not reinstate the Policy either.

---

[6]  The Plaintiffs' claims of fraud in connection with the issuance of the 1099-R Form were dismissed at the motion to dismiss stage as there were no allegations that Prudential either knew of the falsity of its representations in the Form or acted with the purpose of inducing the Plaintiffs to act in reliance thereon.  (See Docket No. 53).  See, e.g., Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) ("To establish a claim for fraud under Massachusetts law, a plaintiff must prove that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." (internal quotation marks and citations omitted)).  The summary judgment record further establishes that Prudential's issuance of the 1099-R form was consistent with its understanding of its reporting obligations.

The Plaintiffs seem to contend that the Policy did not lapse before July 6, 2010, the date of the letter entitled "Lapse-Final Notice." (Def. Ex. A-6). However, that notice clearly states that the insurance Policy "has lapsed because we haven't received the premium due on April 1, 2010." (Id.). It also explains, as quoted above, that because of the lapse Prudential would be filing a 1099-R Form. (Id.). There is no basis for the Plaintiff's contention that the Policy did not lapse until July 6, 2010. Prudential is entitled to summary judgment for this reason as well.

C. **Plaintiffs' Objection and Renewed Motion for Summary Judgment**

On February 2, 2018, in a Report and Recommendation, this court adopted Prudential's proposed schedule to file a motion for summary judgment and stated "[i]n their response, the [P]laintiffs may cross-move for summary judgment." (Docket No. 157 at 3). Plaintiffs filed an objection to the Report and Recommendation, an objection to the District Judge's adoption of the Report and Recommendation, and a "Corrected Motion for Summary Judgment" (Docket Nos. 163, 168, 169), which motion was not in accordance with the scheduling order entered by the court. (Docket No. 161). On April 4, 2018, this court entered an order striking Plaintiffs' "Corrected Motion" (Docket No. 170), and Plaintiffs filed their Objection and Renewed Motion on April 23, 2018. (Docket No. 171).

In their objection to the District Judge's adoption of the Report and Recommendation, Plaintiffs cited Mass. Gen. Laws ch. 175, § 110B and asserted that it applies to the Policy. (Docket No. 168). "Section 110B addresses directly notice requirements in the case of a termination or lapse of coverage of a noncancellable accident and health insurance policy due to nonpayment of premiums[.]" Kavanagh v. N.Y. Life Ins. Co., 170 F.3d 253, 256 (1st Cir. 1999). Section 110B states:

> No policy of insurance referred to in section one hundred and eight and no policy of individual life insurance issued or delivered in the commonwealth, except a policy which by its terms is cancellable by the company or is renewable or continuable with its consent, or **except a policy the premiums for which are payable monthly or at shorter intervals**, shall terminate or lapse for nonpayment of any premium until the expiration of three months from the due date of such premium[.]

Mass. Gen. Laws ch. 175, § 110B (emphasis added).

It is undisputed that Plaintiffs' premium payments were due monthly. (DF ¶¶ 4-6). As a result, the Policy unambiguously falls into the exception created by the statute and past due premiums in this case are not subject to a three-month grace period. For this reason as well, Plaintiffs' requests for summary judgment should be denied.

### D. The Court's Authority to Impose Sanctions

As noted above, the Plaintiffs have renewed their request that Prudential and Prudential Insurance Agency, LLC be defaulted. (Docket No. 179 at 2-3). There is no merit to the request for default against the appropriately dismissed defendant, Prudential Insurance Agency, LLC. Nor have Plaintiffs established any wrongdoing on the part of Prudential which would warrant an order for default judgment. Moreover, Plaintiffs have been advised that the repetitive, baseless requests for default may result in sanctions. (See, e.g., Docket Nos. 31, 48, 61, 67-69, 74, 157). At the motion hearing on July 11, 2018, Prudential requested sanctions against Plaintiffs. (Tr. at 17-18). Under Federal Rule of Civil Procedure 11, the court may impose sanctions on an unrepresented party if he submits pleadings for improper purposes or with frivolous or malicious claims. Fed. R. Civ. P. 11(b)(1); Heller, 957 F.2d at 31 (pro se parties are required to comply with the Federal Rules of Civil Procedure).

A district court has the discretion to manage its own proceedings.  See Cok v. Family Court of R.I., 985 F.2d 32, 34 (1st Cir. 1993).  "The law is well established that it is proper and necessary for an injunction to issue barring a party . . . from filing and processing frivolous and vexatious lawsuits."  Gordon v. U.S. Dep't of Justice, 558 F.2d 618, 618 (1st Cir. 1977).  Despite having been informed numerous times in this action that Plaintiffs' requests for default against Prudential Insurance Agency, LLC and Prudential could not proceed, Plaintiffs continue to move for default in this action.  Additionally, Plaintiffs failed to follow the Federal Rules of Civil Procedure and the court's motion schedule in connection with their repeated requests for summary judgment.  The time has come to end these time consuming, distracting and meritless motions.  Therefore, this court recommends that Prudential's request for sanctions be allowed in that the Plaintiffs be precluded from filing any further pleadings against Prudential or Prudential Insurance Agency LLC relating to the Policy or related tax assessment without prior leave of court, except in connection with an appeal of the rulings on any of the motions for summary judgment.  Finally, this court recommends that the Plaintiffs' request for sanctions be denied.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Prudential's "Motion for Summary Judgment" (Docket No. 175) be ALLOWED, and that Plaintiffs' Objection and Renewed Motion (Docket No. 171) and requests for summary judgment in their favor (Docket Nos. 179, 181) be DENIED.  Additionally,

this court recommends that Prudential's request for sanctions be ALLOWED as detailed herein

and that Plaintiffs' request for sanctions be DENIED.[7]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).